# W. M. NEWTON v. HEIDENHEIMER & CO.

## COURT OF APPEALS, GALVESTON TERM, 1884.

*Attachment Liens—Jurisdiction of County Courts to enforce on lands.*—The doctrine laid down by this court in Shandy and Conrales v. Logeman, (1 Texas Law Reporter, 620) to the effect that a proceeding by attachment, where land is levied upon by virtue of the writ, is a suit to foreclose a lien upon land, and that the enforcement of such a lien is beyond the jurisdiction of the county court, re-asserted.

*Same.*—County courts as organized under the constitution of 1866, with respect to jurisdiction so far as lands were concerned, were inhibited only from trying actions of trespass to try title, or to enforce vendor's liens. Though swept away by the re-construction measures of the general government, the same provision was re-created by the constitution of 1876.

*Same.*—Section 8 of Art. 5 of the constitution declares that the district court shall have original jurisdiction of all suits for the trial of title to land and for the enforcement of liens thereon. Section 16, while it says nothing about the jurisdiction of the county court to enforce liens upon lands, expressly denies its power to adjudicate actions for the recovery of lands. Neither subject is mentioned in section 19, regulating jurisdiction of justice's of the peace.

*Same.*—Art. 1117, Rev. Stats., gives jurisdiction to the district court of all suits for the trial of title to land, and for the enforcement of liens thereon. Art. 1164 specifically withholds such jurisdiction from county courts, and art. 1539, confers upon justice's of the peace jurisdiction to foreclose mortgages and liens upon personal property when the amount in controversy comes within their jurisdiction.

*Same.*—In Hillebrand v. McMahon (2 Texas Law Reporter, 65) the Supreme Court in substance construes these provisions to refer to such liens as were created by act of the parties; such as would, perforce, have to be set up in the pleadings of the cause wherein the foreclosure is sought, and not to such as were created by levy of attachment or other unwilling lien fastened upon the property without consent of parties by virtue of certain legal proceedings. From this doctrine this court dissents, and holds that a suit by attachment levied upon land, is a suit to enforce a lien upon land, jurisdiction to do which, is exclusively committed to the district court. This position is believed to be sustained by Art. 180, Rev. Stats., which provides that, "should the plaintiff recover in the suit, *such attachment lien shall be foreclosed as in case of other liens,*" But see the opinion for an elaboration of the question.

*Sequent*—County courts have no jurisdiction to enforce attachment liens on lands.

Appeal from Galveston County.

*Hume & Shepard,* for the appellant.

*M. C. McLemore,* for the appellee.

Opinion by White, P. J.

A single question only is presented by this record. It is: "Has the county court, under our constitution and existing laws, jurisdiction to enforce a lien upon land created by the levy of an attachment?" Identically the same question came before us in the case

of Shandley v. Conrales & Logeman, and we held that a proceeding by attachment, where land is levied upon by virtue of the writ, was a suit to foreclose a lien upon land, and that the enforcement of such a lien was beyond the jurisdiction of the county court. (W. & W.'s Con. Rep., Sec. 238; for opinion in full, see 1 Texas Law Reporter, 620.)

Since our decision of that case, a similar question, with reference to the jurisdiction of justices of the peace to enforce liens created by the levy of writs of attachment upon land, has been adjudicated by our Supreme Court in the case of Hildebrand v. McMahon et al., and wherein they expressly hold that justices of the peace have such jurisdiction. (2 Texas Law Reporter, 65.)

A county court, with jurisdiction to try civil and criminal cases in this State, was the creature of the constitution of 1866, which, in express words, gave the district court original jurisdiction of all suits for the enforcement of liens on land. (Art. 4, Constitution 1866, Sec. 16.)

By the Act of 1866, to organize them, and define their powers, county courts, so far as land was concerned, were only inhibited from trying actions of trespass to try title, or to enforce vendors' liens. (1 Pas. Dig., Art. 6068.)

Its existence was a brief one, the reconstruction policy of the general government having swept it away with the constitution which created it. Our present constitution again revived, or re-created it, in 1876, as a tribunal with civil and criminal jurisdiction. We only allude to this history to show that in so far as county courts are concerned, the same argument in favor of their jurisdiction in the matter before us, to-wit: that it was long exercised; never questioned, or disputed; was recognized, and acquiesced in by the superior courts, does not obtain, as in the case of the justices' courts. And we might rest this portion of the argument right at this point, and claim that, in so far as county courts were concerned, the question as to their jurisdiction to enforce such liens was one of first impression, growing out of the constitution and laws of 1876. Aside from this consideration, however, we are free to admit that the other reasons insisted upon in Hildebrand v. McMahon et al., maintaining the jurisdiction, are applicable alike to both courts, and if good in the one instance, are good in the other.

Defining the jurisdiction of the district court, section 8, article 5,

of the constitution, among other things, declares that it shall have original jurisdiction "of all suits for the trial of title to land, and for the enforcement of liens thereon." In section 16, providing the jurisdiction of the county court, nothing is said about the enforcement of liens upon land, though jurisdiction of suits to recover land is expressly denied; and section 19, with regard to justices of the peace, makes no mention of lands, or the enforcement of liens thereon.

Turning to the statutes, article 1117 (Revised Statutes) gives to the district court jurisdiction "of all suits for the trial of title to land, and for the enforcement of liens thereon."

Article 1164, Revised Statutes, declares that the county court shall not have jurisdiction "of suits for the recovery of lands, nor of suits for the enforcement of liens upon lands."

Article 1639, Revised Statutes, gives justices express "power to foreclose mortgages and enforce liens on personal property, where the amount in controversy is within their jurisdiction," while article 1544 expressly denies their authority "for the trial of title to land, or of suits for the enforcement of liens on land."

In Hildebrand v. McMahon et al., the position taken by the Supreme Court is, that the *liens* contemplated by these various provisions, constitutional and statutory, may be defined to be, and must be understood "to be such as were created by the act of the parties; such as existed before the suit was commenced, and formed the basis of it, or an important part of the same, such as mortgages, deeds of trust, vendors' and mechanics' liens, and others of like character; they are such as must be alleged in the pleadings of the cause wherein the foreclosure is sought." That other liens created by the levy of an attachment, etc., which did not exist at the commencement of the suit, but were acquired during its progress, did not arise from consent of parties, but were fastened unwillingly upon the property of the defendant by reason of certain legal measures pursued in court by the plaintiff, such as were not the foundation of the action, but were incidents arising during its progress; where no allegations in reference to them in the pleadings, nor prayer for their enforcement were necessary, even after they had been created; where no evidence could be introduced on the trial in reference to them, and no finding of them in the verdict was required, but where the judgment of the court foreclosing them followed as matter of

course upon the recovery of money for which the action was brought; that with regard to all such liens these provisions of the Constitution and laws could not apply.

In an able opinion of Presiding Judge Walker, of the Commissioners of Appeals, in the well considered case of Scripture v. Kent, a different doctrine to that above enunciated is expressed. Discussing the Constitutional sections above quoted with reference to the jurisdiction of these courts, it is said : "The primary object of the contemplated distribution of jurisdiction evidently was to remove to that court which possessed the highest original jurisdiction, the right to determine suits wherein the interests of the parties in realty was involved. The mere form of words, whereby that intention was attempted to be expressed, has far less relation to their technical significantion, considered in respect to terms of pleading, or forms of action, than to the vital purpose intended to be effected, viz : that rights in land or realty, as distinguished from causes of action *ex contractu* relating to land, but not involving the right, or ownership thereof, or torts, or contracts involving simply the right to the possession of land, without affecting the rights of the parties to the land, should be determined in the district court, and, as now expressed in the Constitution, certainly not to be determined in the county court." And as a conclusion of the whole matter it is said : "Neither the form of the proceeding nor the natural degree, or value of the estate, can affect the question." See W. & W.'s Con. Rep., Sec. 1056. "Is a suit by attachment levied upon, land a suit to enforce a lien upon land ?" This question was answered by us in the affirmative in Shandley v. Conrales et al. *supra.* It is true that the land cuts no figure, or may cut none, in the case, until the writ of attachment is levied; notwithstanding this, however, the effect of the lien upon it is considered and determined on the trial, because the levy and creation of the lien brings the land, to the extent and for the purpose of the lien, into the suit, as much so as if the suit had been brought to enforce a lien arising directly from a contract of parties. R. S., Art. 179. This conclusion is not left dependent upon inference, deduction, or usage; it is expressly provided by the statatue that "should the plaintiff recover in the suit *such attachment lien shall be foreclosed, as in case of other liens*," etc. R. S., Art. 180. This important provision of the law, which is a new rule of practice adopted with the Revised Statutes, is not discussed, or even cited in Hil-

debrand v. McMahon et al. In our opinion it fully meets and answers the argument of that case, so far as it rests upon the practice as it has heretofore existed in this State. It points out most clearly also the fallacy of that argument, derived from a supposed similarity of power in enforcing an attachment lien, and a lien created by execution, or *fieri facias*. The foreclosure in attachment must be part and parcel of the judgment, and consequently must be part of the case to be found and determined in the suit. It is a necessary part of the case to be found by the verdict of the jury, and to be declared in the judicial act of rendering the judgment. Handel v. Elliot, 2 Texas Law Reporter, 409; R. S., Art. 1340.

The lien must be foreclosed, as other liens. There is no similarity between it and a lien created by levy of execution. In the latter instance no act of foreclosing is required; there is nothing to foreclose. A *fieri facias*, instead of being a judicial, is simply a ministerial act, wherein the lien which it creates is not, and cannot be called in question, or in any manner pre-determined by the county judge, or justice, because the lien is something which has no existence when the *fieri facias* is issued, nor until it is levied. In the county court its issuance is the act of the clerk, and the judgment simply orders it to issue, without directing in any manner how it is to be levied, unless in cases of foreclosure of liens and the like. If land is levied on and sold under it, when issued from the county court, or justice's court, the sale is one by operation of law as well as by the act of the court, and title acquired thereunder is, by virtue and operation of law, as valid as though the writ had issued from the district court. A justice, or a county court, has nothing to do with the levy and sale of the land under their executions. This is the act of the sheriff. An attachment may be "but an initiatory execution, issued before judgment," but still it brings the land into the case before judgment, and injects into the case an important, and oftentimes one of the most important matters to be tried in the case, viz: whether the land is subject to the lien. R. S. Art. 1340.

Suppose it is the homestead, could not the defendant insist upon, and have the question adjudicated in the case? Suppose it is held in trust for a third party, could not that defense be interposed? If these defenses cannot be availed of in the county court what becomes of the argument which supports the jurisdiction upon the

ground that our whole system "abhors a multiplicity of suits to set-
tle a matter in controversy between the same parties." If they can,
would the county court have jurisdiction of the issue? Most clear-
ly, because the issue would then directly involve the title. But it
is said : "An attachment is but an initiatory execution issued be-
fore judgment and in anticipation of it. In selling land by virtue of
an execution (attachment) issued before judgment, a justice exercises
no higher power than in making sale under process issued after-
ward. He is, in effect, foreclosing a lien as much in one case as in
the other, the one having been obtained by levy of an attachment
and the other by levy of an execution." The argument is what in
logic is called a *petitio principii*. The land is not sold after judg-
ment by virtue of the attachment, but by virtue of the judgment
finding it liable to sale, which judgment when that fact is found,
renders the writ of attachment *factus officio*, and the subsequent
sale is by virtue, not of the original attachment, but the judgment
foreclosing the attachment lien.

What is a lien? Mr. Bouvier says : "A hold, or claim, which
one person has upon the property of another as a security for some
debt, or charge. In every case in which property, either real or
personal, is charged with the payment of a debt, or debts, every
such charge may be denominated a·lien on the property." Whitta-
ker on Liens, p. 1. "A lien is a right to hold." 2 Campbell, 576;
4 Wait's Acts and Def., 315, *et seq*.

When an attachment is levied upon land the question is, has the
the plaintiff the right to hold the land subject to his debt? That
question is determined by the court and jury, and if they determine
it affirmatively the court enforces the lien upon the land. This, the
Constitution says, can be done by the district court, and this the stat-
utes say, cannot be done by the county court, and justices of the
peace, in this State.

We might content ourselves with the conclusion thus irresistibly
forced upon us, but we have yet to meet, and are confronted with
two plausible, if not powerful arguments, the one derived from con-
temporaneous construction, and the other based upon the doctrine,
*ab inconvenienti*.

As to contemporaneous construction, we have seen that it has but
little, if any practicable application to the county court, as that tribu-
nal is now organized,nor has it any to the new practice with regard to

such foreclosures, (Article 180), for the first time adopted in our Revised Statutes. We are free to admit that where, in our opinion, a question is one of doubt, the force of contemporaneous "judgment, especially in view of the injurious consequences that may result from disregarding it, is fairly entitled to turn the scale in the judicial mind. When, however, no ambiguity, or doubt, appears in the law, "we think," says that great law writer, Mr. Cooley, "the same rule obtains here as in other cases, that the court could confine its attention to the law, and not allow intrinsic circumstances to introduce a difficulty when the language is plain. To allow force to a practical construction in such a case would be to suffer manifest perversions to defeat the evident purpose of the law makers. Contemporary construction can never abrogate the text; it can never fritter away its obvious sense; it can never narrow down its true limitations; it can never enlarge its business." Cooley on Con. Lim., (4 ed.), top of page 84."

Upon the other ground the same learned author says, in a note to the text, "We agree with the Supreme Court of Indiana, that in construing Constitutions, courts have nothing to do with the arrangement *ab inconvenienti*, 'and should not bend the Constitution to suit the law of the hour,' (Greencastle Township v. Black, 5 Ind., 565), and with Bronson, C. J., in what he says in Oakley v. Aspinwall, (3 N. Y., 568), it is highly probable that inconveniences will result from following the Constitution as it is written. But that consideration can have no force with me. It is not for us, but for those who made the instrument, to supply its defects. If the Legislature, or the courts, may take the office upon themselves, or if, under color of Constitution, or upon any other specious ground they may depart from that which is plainly declared, the people may well despair of ever being able to set any boundary to the powers of the gevernment. Written Constitutions will be more than useless * * * *. My rule has ever been to follow the fundamental law as it is written, regardless of consequences. If the law does not work well the people can amend it, and inconveniences can be borne long enough to await that process. But if the Legislature, or courts, undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the Constitution which nothing can heal. Cooley's Con. Lim., top page 87, and notes.

Our Constitution, as before stated, has expressly given to the dis-

trict court original jurisdiction to enforce liens upon land, (Article 5, Section 8), and it has conferred neither a like nor concurrent jurisdiction upon any other court. Under the provisions of section 22 of article 5, the Legislature might have changed the jurisdiction of the county courts, and enlarge it so as to have authorized them to foreclose, or enforce liens upon land; but it has not done so. Happily, the Legislature can still exercise the right to confer the power if it should deem it necessary to the convenience of parties litigant, and a due administration of justice. Until they have provided this "sure and safe way" out of the difficulty we shall be constrained by our oaths of office, and by our sense of official duty, however reluctant we may be to differ from our Supreme Court, to adhere to our previous opinion, and to hold that, in our opinion, a plain construction of our Constitution and laws, forbid county and justices' courts from enforcing, or foreclosing attachment liens on land. And so holding, we reverse the judgment of the county court in this case, and remand it for a new trial. Reversed and remanded.